Daniels, J.
The design of the action was the correction of a deed made by Edwin J. Stason to Edine E. Nichols, the wife of the plaintiff. He purchased the property and received a conveyance of it in the ordinary form. Before the conveyance was made to himself, he informed the attorney, who was acting for him: ‘‘ That he desired the title taken in such a way that it should be his wife’s, or stand in her name for her life, and thereafter should revert to *307 him.” And his own testimony was to the same effect, that he wanted Mr. Taylor, “to draw a deed conveying this property to my wife, while she lives, and at her death to have the paper drawn so this property will revert dir-ectly to me.”
And evidence was given by the witness Mary E, Boach, in which she stated that Mrs. Nichols said to her: “If she had died, everything belonged to William; that she had nothing to leave to anybody; that was her just language. By William she referred to her husband.”
The witness Caroline Bennett made a statement substantially the same, in which she said that Mrs. Nichols ‘ ‘ said that her only regret was leaving her husband, but he was well fixed and she didn’t regret it as much as she would if it was not fixed that he would have no trouble in regard to worldly affairs.”
Jessie Bearing stated in her evidence that she had a conversation with Mrs. Nichols six weeks prior to her decease, and then added: “I asked her if she had made any provision in case of sudden death; she said that she had made no will, she didn’t think it necessary tó do so, but that •everything she had would be her husband William’s, everything was so arranged.”
From this evidence which was not contradicted, it could very well be inferred that the understanding, not only of the plaintiff, but that of his wife, was that the property was placed in such a condition that in case of her decease her husband would be its owner, and that the conveyance in form, giving it absolutely to her, was outside of the intention of the parties.
There was other evidence in the case also which had a tendency to establish the fact that the deed from Stason to the plaintiff’s wife was made in the form of conveying the property wholly to her, under a misapprehension of this ■object and design of the parties. She in no manner participated in the business leading to the execution of the •deeds. But it was wholly done under the authority and directions of the plaintiff himself. And it appears by his evidence, as well as by the evidence of Taylor, that his intention was that the title should be placed in such a condition that his wife should have the property during her life and, after her decease, that the title to it should be vested in him. The deed from Strauss to himself was not made in that form or to carry out such an expectation. And the testimony has the tendency to establish the fact to be that a deed was immediately afterwards executed by the plaintiff to Edwin J. Stason, but not, in fact, delivered to him in order to carry out the intention expressed by himself and his attorney in respect' to the conveyance of *308 the title. And, from some omission on the part of the attorney, the object of the conveyance was not explained to* Stason, but he made and executed the deed to Mrs. Nichols, obtaining the description of the property from the deed executed by Strauss, on the supposition that she was to have an unqualified title, and in that manner, through his ignorance of its design, the deed was in form drawn and subscribed so as to convey the property wholly to Mrs. Nichols instead of to herself only for life.
The fact that the deed by Stason was made in this manner, the plaintiff testified, was not known to him, that he did not look at the papers themselves or read the deed, but that it was handed to him by a clerk, in an envelope, and that it was so received by him, is corroborated by the clerk himself. And there is reason to believe, as the design was that the title should be placed in the condition mentioned by the plaintiff and his attorney, that the fact that it had been placed otherwise did not come to the knowledge of the plaintiff during the life-time of his wife. Neither of the deeds appear to have passed, so far as the proof extended, beyond the possession of the plaintiff. What was done with them after they were delivered to the plaintiff himself, the case does not disclose. But it does appear, if the evidence of these witnesses is reliable, and no good reason for rejecting their statements has been shown, that it was intended that the title should stand in such a. condition that the plaintiff should own the property after the death of his wife, and that no change took place in the existence of that intention, but that it was defeated by a mistake or misunderstanding arising out of the omission of the attorney to inform Stason of the manner in which the deed from himself should be made. And as the plaintiff was the person in the entire charge and management of the business, and his wife expected, according to the statement made by her, to acquire no greater interest than an estate for life in the property, there was sufficient to warrant the conclusion, if the witnesses were to be believed, that the deed executed by Stason was the result of a mutual mistake, and did not carry out the design or intention of either of the parties.
The evidence, however, presented this as a question of fact to be determined by the court, and it may be upon this state of if, as it is contained in the case, that a dismissal of the complaint would have to be sustained. But it is not necessary to decide that question for the disposition of the appeal. For evidence was offered on the part of the plaintiff, and rejected by the court, which should have been received. It was proposed in his behalf to show; what had been done with the Stason deed after it was delivered to *309 the plaintiff. And that was rejected, probably upon the ground that the plaintiff was considered an incompetent witness to testify to that fact. But he was not incompetent, for what he did with the deed, if it never was delivered to Mrs. Nichols, as the fact was alleged in the complaint, would not be a transaction with her, but would be exclusively the act of the plaintiff himself. And to prove the performance of that act he was a competent witness. And if the fact had been established by his testimony that the deed remained at ah times in his possession, then it surely had not gone so far as to deprive the court, in any view, of the power of reforming it in such manner as to carry out the intention and design for which it was made.
A contract was entered into for the purchase of the property before the deed was made by Strauss, and delivered to the plaintiff, and he was asked whether he paid the consideration of that contract. This was rejected by the court as irrelevant and an exception was taken on the part of the plaintiff. The transaction to which the attention of the witness was in this manner directed was in no way personal between himself and Mrs. Nichols. In fact she had no connection with it in any sense whatever, but it was entirely distinct and separate from the business so far as it transpired, between herself and her husband. This was a circumstance, if it had been received in evidence, which would have had some tendency at least to sustain the probability of the truth of his testimony, that the title to the property was entirely subject to and under his own control. These rulings cannot be sustained, and even though the evidence rejected by them would have been slight in the case, the plaintiff was entitled to have it received however slight its effect might be upon the disposition of the action. The equities were all with the plaintiff for the property, after the decease of his wife, was claimed by one only of her heirs, who, of course, in no manner parted with anything to acquire the title.
Her heirs were made parties to the action, but the respondent and his wife are the only persons who answered and contested the right of the plaintiff to have the deed made by Stason so corrected, as to carry out this design and object stated to have been in view in the purchase of the property. The others made default, but the court in the disposition of the action dismissed the complaint entirely. That certainly should not have been done, for as to the others, the case was confessed by their default. And as to the respondents, Charles W. Bennett and his wife, the evidence rejected in this manner under their onjection, should have been received. For the plaintiff was entitled *310 to its weight and effect in determining the disposition of this controversy.
The judgment should be reversed and a new trial ordered, with costs to the plaintiff to abide the event.
Van Brunt, P. J., and Brady, J., concur.